# 2008 DTA 110

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE PONCE**
**PANEL XI**

RAMÓN DAMIÁN REYES LAMBOY, HERMINIA VÉLEZ RODRÍGUEZ
Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Apelados

v.

JOHN FERNÁNDEZ VAN CLEVE, JOYCE PALMER ALSINA Y LA SOCIEDAD LEGAL DE
GANANCIALES COMPUESTA POR AMBOS; ET. ALS.
Apelantes

Núm. KLAN-2008-00237

San Juan, Puerto Rico, a 8 de septiembre de 2008

Panel integrado por su Presidente, el Juez Rivera Martínez,
el Juez Colón Birriel y la Juez Jiménez Velázquez

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

John Fernández Van Cleve, Joyce Palmer Alsina, y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en adelante, los "*apelantes*") solicitan la revocación de la **Sentencia** dictada el 14 de diciembre de 2007, por el Tribunal de Primera Instancia, Sala de Ponce, Hon. Julio A. Díaz Valdés, Juez, en el caso *Ramón Damián Reyes Lamboy, Herminia Vélez Rodríguez y la Sociedad Legal de Bienes Gananciales compuesta por ambos v. John Fernández Van Cleve, Joyce Palmer Alsina y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Sixto Lugo Acosta, María Martínez y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Álvaro Bolaño de la Hoz, Lizbeth Ivelisse Meléndez y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Doral Bank,* Civil Núm. JAC2003-0608, sobre: deslinde, acción reivindicatoria y daños y perjuicios. Mediante el dictamen, archivado en los autos copia de su notificación el 20 de diciembre de 2007, instancia declaró **Ha Lugar** la demanda presentada por Ramón Damián Reyes Lamboy, Herminia Vélez Rodríguez y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en conjunto, los "*apelados Reyes Vélez*"), en cuanto a la reclamación de deslinde y reivindicación instada en contra de Álvaro Bolaño de la Hoz, Lizbeth Ivelisse Meléndez y la Sociedad Legal de Bienes Gananciales compuesta por ambos (denominados colectivamente como el "*matrimonio Bolaño Meléndez*"). Instancia determinó que a la luz de la prueba documental, testifical y pericial, aportada y creída, el matrimonio Bolaño-Meléndez invadió el solar de los apelados Reyes Vélez en 39.0042 metros cuadrados; por lo que ordenó que dicho terreno fuese restituido adecuadamente al Solar "*D*". [1] En consecuencia, el Solar "*E*" [2] sufrirá una disminución por 39.0042 metros cuadrados en su colindancia con el Solar "*D*", y que corresponden al área reivindicada por los apelados Reyes Vélez. Se ordenó, además, que las colindancias entre ambos solares fuesen re-planteadas para cumplir con los términos de la sentencia.

En relación al acuerdo transaccional **[3]** llevado a cabo entre los apelados Reyes Vélez y Doral, **[4]** instancia determinó que no podía ser aceptador, ni dictar sentencia de conformidad con éste; pues no se presentó evidencia de que cierta *Acta de Subasta* fuese final y firme, ni evidencia de que se hubiere otorgado la correspondiente escritura de venta judicial a favor de Doral.

En cuanto a la reclamación de deslinde y reivindicación instada por los apelados Reyes Vélez, instancia declaró **Ha Lugar** el reclamo, y determinó que a la luz de la prueba presentada y creída, el camino levantado por los apelantes invade terreno de los apelados Reyes Vélez en 45.2010 metros cuadrados. Concluyó que de esos 45.2010 metros cuadrados, seis (6) metros corresponden a la entrada que da acceso al solar de los apelados Reyes Vélez. Por tal razón, ordenó que los 45.2010 metros cuadrados de terreno fuesen restituidos adecuadamente al Solar "*D*". En su consecuencia, el inmueble de los apelantes sufrirá una disminución de 45.2010 metros cuadrados correspondientes al área reivindicada por los apelados Reyes Vélez.

Finalmente, instancia declaró **No Ha Lugar** la reclamación de daños y perjuicios presentada por los apelados Reyes Vélez en contra de Sixto Lugo Acosta, María Martínez y la Sociedad Legal de Bienes Gananciales compuesta por ambos (denominados en conjunto como "*Lugo Martínez*"), por éstos no haber otorgado oportunamente una escritura de compraventa que fuese inscribible en el Registro de la Propiedad. Concluyó que de la prueba no surgía que el matrimonio Lugo Martínez hubiese sido indolente, negligente, o actuado con desidia o falta de interés. Los apelados Reyes Vélez tampoco demostraron qué acción u omisión llevó a cabo el matrimonio Lugo Martínez, o dejó de realizar, que retrasó la inscripción de la finca. Según el dictamen, la alegación de que la inscripción de la finca en el Registro de la Propiedad tardó doce (12) años, de por sí, no establece negligencia. Por esta razón, instancia desestimó, con perjuicio, la reclamación de daños y perjuicios instada por los apelados Reyes Vélez en contra del matrimonio Lugo Martínez.

Considerando el recurso de apelación presentado el 11 de febrero de 2008, mediante *Resolución* de 5 de marzo de 2008, concedimos a los apelantes un plazo de treinta (30) días para presentar una exposición narrativa de la prueba por estipulación con los apelados. Para ello, ordenamos a la Secretaría del Tribunal de Primera Instancia, Sala de Ponce, permitir a los apelantes regrabar la vista a su costo, a los fines de perfeccionar su recurso de apelación.

El mismo día, los apelantes presentaron escrito titulado *Moción en Solicitud de Que se Eleve al Tribunal de Apelaciones Prueba Admitida en el Tribunal de Primera Instancia,* predicado en que durante el juicio se presentaron diversas piezas de prueba demostrativa que no son de fácil reproducción, las que son esenciales para prevalecer en su contención en este recurso, y que, por lo tanto, ordenáramos a instancia elevar dicha prueba. Atendida la moción, mediante *Resolución* de 5 de marzo de 2008, ordenamos a instancia remitir los autos originales del caso, así como toda la prueba demostrativa admitida en evidencia, disponiendo para ello de diez (10) días.

Por su parte, el 6 de marzo de 2008, Doral Financial Services, Inc. (en adelante, "*Doral Bank*") presentó *Réplica del Codemandado Doral Bank al Escrito de Apelación del Codemandado John Fernández Van Cleve,* solicitándonos que declaráramos **No Ha Lugar** el recurso de los apelantes y que mantuviéramos en todo su vigor la sentencia recurrida. Enfatizaron que la única controversia en su contra la levantaron los apelados Reyes Vélez, quienes al encontrarse con una discrepancia de terreno en la parte Norte de su solar, demandaron al matrimonio Bolaño Meléndez, dueños del solar "*E*" colindante por la parte Norte. Luego de que el solar fuese adquirido por Doral Bank como resultado de un procedimiento de ejecución de hipoteca, los apelados Reyes Vélez trajeron a dicha institución bancaria como posible parte interesada. Aclara Doral Bank, que ningún otro demandado en el caso, a saber, los apelantes Fernández Palmer, el matrimonio Lugo Martínez y el matrimonio Bolaño Meléndez, levantaron alegación en contra de ellos. En consideración a lo antes dicho, señalaron que no intervinieron en las controversias relativas a la colindancia entre el solar de los apelados Reyes Vélez y los apelantes Fernández Palmer.

En el recurso presentado, Doral Bank alegó, en síntesis, que la solución de la controversia sobre cabida y colindancias había sido resuelta, previo a la vista en su fondo, a través del plano propuesto por el Agrimensor del Tribunal, el señor René Guerra. Señaló que el perito contratado por ellos, Agrimensor José Viruet Ramos, y el perito de los apelantes, el Agrimensor Julio Ríos, concluyeron en común acuerdo, que el plano presentado por el perito del Tribunal, terminaba con la controversia relativa a las mesuras y linderos. Arguyó que con el acuerdo entre los tres (3) peritos comenzó el juicio, y que sorpresivamente el agrimensor de los apelantes, el Agrimensor Ríos, cambió de opinión en cuanto a la utilización del Método de Mínimos Cuadrados, explicando que el cambio obedecía a que obtuvo información que no tuvo disponible cuando emitió su opinión preliminar. Alegó que la nueva postura del Agrimensor Ríos es una opinión abstracta en total contradicción con el acuerdo previo entre los tres (3) peritos ante el Tribunal y que la prueba presentada fue "*mera teoría, vaga e inexacta, y no estaba respaldada por algún plano u otra evidencia sólida de clase alguna.*" Es por esto, que concluyeron que instancia no erró al determinar que las colindancias eran aquellas indicadas en el plano propuesto por el perito del Tribunal, el Agrimensor Guerra.

Así las cosas, el 10 de marzo de 2008, los apelados Reyes Vélez presentaron su *Alegato en Oposición a la Apelación* solicitándonos que declaráramos **No Ha Lugar** el recurso interpuesto por los apelantes y que confirmáramos la sentencia de instancia, toda vez que dicho foro no erró al declarar **Ha Lugar** la acción de deslinde y la reivindicación del solar propiedad de los apelados. Enfatizaron que el co-demandado Doral Bank, colindante por el Norte, se allanó al deslinde y a la reivindicación, al igual que el matrimonio Lugo Màrtínez. Por otro lado, argumentaron que los apelantes radicaron un recurso frívolo, por lo que solicitaron se les imponga el pago de honorarios de abogado en una suma razonable, dado la cantidad de trabajo desplegado en la representación legal, más el pago de los gastos y costas incurridas en la apelación. Mediante *Moción en Solicitud de Órdenes*, presentada el 10 de marzo de 2008, los apelados Reyes Vélez alegaron que los apelantes incumplieron con la Regla 19(A) de nuestro Reglamento, toda vez que junto a su apelación, no sometieron una exposición narrativa de la prueba.

Adujeron que la apreciación de la prueba relacionada por los apelantes, Fernández Palmer, en su alegato, deja fuera las declaraciones de los testigos esenciales consideradas por instancia, entre ellas, las declaraciones de los peritos. Igualmente, dejaron fuera de su exposición la interpretación de toda la prueba documental presentada por los apelados Reyes Vélez, a saber, un título de propiedad de fecha 7 de enero de 1994, y cinco (5) planos, todos presentados ante la Administración de Reglamentos y Permisos (ARPE) en el 1993. En adición, arguyeron que los apelantes Fernández Palmer incluyeron en su alegato prueba que no estuvo ante la consideración de instancia, en específico, la señalada en las páginas trece (13) y catorce (14) de su apelación, incluyendo los Apéndices del uno (1) al seis (6). Por lo antes mencionado, solicitaron que ordenáramos a los apelantes Fernández Palmer presentar la transcripción de la prueba testifical presentada en el juicio, y que ordenáramos a instancia, elevar todo el expediente del presente caso, junto a toda la prueba documental admitida en evidencia.

Informaron, además, que fueron al solar y observaron que los nuevos puntos de colindancia habían sido fijados. En conversación sostenida con el perito del Tribunal, vía telefónica, los apelados fueron informados de que los apelantes Fernández Palmer le habían notificado a dicho perito, copia de la sentencia y que éste entendió que debía proceder a fijar las colindancias. Arguyen que les correspondía a ellos, y no a los apelantes, solicitar al tribunal la ejecución de la sentencia, una vez ésta adviniera final y firme. De la notificación de la sentencia dictada no se colige que el Perito del tribunal hubiese sido notificado.

Atendida la *Réplica del Codemandado Doral Bank al Escrito de Apelación del Codemandado John Fernández Van Cleve*, mediante *Resolución* de 11 de marzo de 2008, tomamos conocimiento de su contenido. No obstante, advertimos a los apelados Doral Bank, que su escrito iba a ser considerado una vez los apelantes Fernández Palmer y los apelados Reyes Vélez cumplieran con lo dispuesto en nuestra *Resolución* de 5 de marzo de 2008.

Así las cosas, mediante *Resolución* de 10 de abril de 2008, atendimos la *Notificación* presentada el 3 de abril de 2008 ante instancia, sobre el costo de la regrabación de los procedimientos llevados a cabo en el caso y tomamos conocimiento sobre su contenido. Surge de la *Notificación* que las vistas llevadas a cabo durante los días 11, 15, 29 y 30 de octubre, y 1 de noviembre de 2007, tuvieron una duración aproximada de 12:34 horas, y los honorarios ascendían a $65.

Por su parte, los apelantes Fernández Palmer presentaron *Moción en Solicitud de Prórroga para Transcribir Vista Judicial por Transcriptor Privado*, el 10 de abril de 2008. Solicitaron en su escrito un término adicional de veinte (20) días para presentar la transcripción del juicio. Así, mediante *Resolución* de 15 de abril de 2008, concedimos a los apelantes un plazo final e improrrogable a vencerse el viernes 2 de mayo de 2008.

Oportunamente, los apelantes presentaron *Moción Informativa en Cumplimiento de Orden*, con fecha de 2 de mayo de 2008, notificando que presentaban ante este foro la transcripción de la prueba testifical, cumpliendo fiel y cabalmente con las órdenes emitidas por este tribunal. Mediante *Resolución* de 8 de mayo de 2008, tomamos conocimiento sobre dicha moción y concedimos a los apelados Reyes Vélez y otros, un término de diez (10) días, para expresar sus correcciones o enmiendas a la transcripción, transcurridos los cuales, se entenderían como correcta. Señalamos, además, que una vez cumplido dicho trámite, los apelados disponían de treinta (30) días para presentar su alegato.

Por su parte, el 19 de mayo de 2008, los apelados Reyes Vélez presentaron *Moción en Cumplimiento de Orden*, predicada en que una vez leída la transcripción habían encontrado errores gramaticales, los cuales fueron señalados y corregidos posteriormente. Mediante *Resolución* de 22 de mayo de 2008, tomamos conocimiento sobre el contenido de dicha moción y ordenamos a nuestra Secretaría que incorporara las enmiendas propuestas a los tomos correspondientes de las transcripciones.

En cumplimiento con lo ordenado, el 6 de junio de 2008, los apelados Doral Bank presentaron *Réplica Enmendada del Codemandado Doral Bank al Escrito de Apelación del Codemandado John Fernández Van Cleve*, reiterando su solicitud de que confirmáramos la sentencia dictada por instancia. Expresaron en su escrito, que habiendo ya radicado su alegato de réplica a la Apelación (el día 6 de marzo de 2008), sin el beneficio de la transcripción de la prueba, les era necesario enmendar su alegato anterior a los únicos efectos de comentar sobre la prueba presentada según surge de la transcripción del récord. Enfatizaron que se reiteraban en todos y cada uno de los argumentos vertidos en el *Alegato de Réplica*.

De igual forma, los apelados Reyes Vélez presentaron *Segundo Alegato de la Parte Demandante Apelada*, el 12 de junio de 2008. En su escrito, indicaron que tomando en consideración la transcripción de la prueba testifical, señalan aquella evidencia, tanto testifical como documental, que sostiene todas y cada una de las *Determinaciones de Hechos y Conclusiones de Derecho* que incluyera instancia en su dictamen.

Resolvemos con el beneficio de la comparecencia de las partes, los autos originales, la exposición narrativa de la prueba, el derecho y la jurisprudencia aplicable, no sin antes exponer el trasfondo fáctico de lo acontecido.

## II

El presente pleito judicial sobre Deslinde, Acción Reivindicatoria y Daños, fue iniciado originalmente por los apelados Reyes Vélez en el Tribunal de Primera Instancia, Sala de Mayagüez, el 2 de abril de 1997, bajo el Número de Caso I AC1997-0136. En su demanda, como primera y segunda causa de acción, alegaron, en síntesis, ser dueños en pleno dominio de un predio de terreno con una cabida de 1,070.86 metros cuadrados, en la jurisdicción de San Germán, identificado en el plano de Inscripción como el solar "*D*", que dicho solar se encontraba invadido por los colindantes y que por esto, solicitaron se procediera al deslinde del mismo y luego a la reivindicación. Trajeron como partes demandadas a los colindantes por el SUR, los apelantes Fernández Palmer, y a los colindantes por la parte NORTE de su solar, los dueños del solar "*E*", el matrimonio Bolaño

Meléndez. Posteriormente, Doral Bank fue traído al pleito como parte necesaria, luego de que adquiriera el solar *"E"* como resultado de un procedimiento de ejecución de hipoteca. Como tercera causa de acción, los apelados Reyes Vélez alegaron que el matrimonio Lugo Martínez era responsable por los daños y perjuicios que les causaron en virtud de haber tirado una cerca de púas sobre las colindancias originales, causando confusión entre dichas colindancias. Lo cual provocó que los apelados Reyes Vélez compraran una residencia más costosa, toda vez que al no poder inscribir el terreno, éstos no pudieron recibir dinero a préstamo para edificar allí su residencia.

Los apelados Reyes Vélez adquirieron su propiedad mediante contrato privado, Affidávit Número 33,499, otorgado en San Germán, el 4 de febrero de 1986, ante el Notario Esmeraldo Vélez Vargas. En la declaración jurada, el matrimonio Lugo Martínez hizo constar que ese mismo día recibieron de manos de los apelados Reyes Vélez once mil ($11,000) dólares, por concepto de precio total de venta de un solar marcado *"D"* en el plano, sito en el Barrio Maresúa de San Germán, con cabida superficial cuadrada de 1,104.92 metros, colindante al NORTE con solar *"E"*, al SUR, con solar *"C"* y remanente y en parte con la calle, al ESTE con la calle, y al OESTE, con solar *"F"*. El matrimonio Lugo Martínez se obligó a otorgar a favor de los apelados Reyes Vélez, la correspondiente escritura pública de segregación y compraventa tan pronto como ARPE aprobara la segregación. Se acordó, finalmente, que los apelados Reyes Vélez entrarían inmediatamente en la posesión del solar *"D"*.

Previo a dicha compraventa privada, los apelados Reyes Vélez examinaron un plano que había sido preparado en el 1984, por el Ingeniero Julio Nazario, que comprendía la segregación de nueve solares, entre ellos el solar *"D"*. En el plano se establecen las colindancias del mencionado solar, con sus linderos, rumbos, ángulos y colindancias. Conforme a dicho plano, el matrimonio Lugo Martínez acordó vender el solar *"D"* a los apelados Reyes Vélez, quienes una vez finalizada la compraventa privada, visitaron el terreno allí donde el señor Lugo le mostró las colindancias, marcadas con varillas de hierro.

Los hermanos John y Bert Fernández Van Cleve, sus respectivas esposas y Sociedades Legales de Bienes Gananciales, adquirieron en común pro indiviso un remanente de 15.8838 cuerdas perteneciente al matrimonio Lugo Martínez, mediante escritura de compraventa número 56, otorgada ante el Notario José Servera Ramos, el 6 de julio de 1987. Se describe la propiedad de la siguiente manera:

*"RUSTICA: Parcela de terreno sita en el Barrio de Maresúa en el término municipal de San Germán, P.R., con una cabida superficial de QUINCE PUNTO OCHO MIL OCHOCIENTOS TREINTA Y OCHO cuerdas (15.8838), colindando por el NORTE, con Aníbal Montalvo, área dedicada a Uso Público, Idelfonso Lugo y solares; por el SUR, con propiedad de Margarita Martínez y Raúl Asencio; por el ESTE, con José A. Matos y Margarita Martínez; y por el OESTE, con Raúl Asencio, una quebrada y Rodolfo Ramírez Nazario."*

Así las cosas, el 11 de marzo de 1988, ARPE aprobó el plano de segregación de los solares, realizado por el Ingeniero Nazario, Caso Número 84-56-C524 MPL, quedando reducida la cabida del Solar *"D"* a 1,070 metros cuadrados. Conformes con la nueva cabida, los apelados Reyes Vélez y el matrimonio Lugo Martínez procedieron a otorgar la escritura número 118, sobre segregación y compraventa, el día 30 de junio de 1988, ante el Notario Esmeraldo Vélez Vargas, donde se hizo constar que el matrimonio Lugo Martínez le vendió el solar *"D"* a los apelados Reyes Vélez, el cual tiene una cabida superficial de 1,070.86 metros cuadrados. Describe el solar *"D"* la escritura de compraventa, de la siguiente manera:

*"RÚSTICA: Parcela de terreno radicada en el barrio Maresúa de San Germán, Puerto Rico, con cabida superficial cuadrada de MIL SETENTA METROS CON OCHENTISEIS CENTÍMETROS (1070.86 m/c); en lindes al NORTE, en cuarenta y tres punto ochenta y cinco metros, con el Solar "E"; al SUR, en cuarenticuatro metros, con el remanente y la calle para uso público; al ESTE, en catorce punto cuarenticinco metros y nueve punto treintiséis metros con la calle para uso público; y al OESTE, en veinticinco metros, con el remanente de*

*la finca principal de donde se segrega.*

*Esta es la parcela "D" en el plano."*

La inscripción de dicha escritura fue rechazada por el Registro de la Propiedad de San Germán, según surge de la Notificación de 22 de diciembre de 1988, por razón de que *"la finca tiene un remanente sin describir de 15.8838 cuerdas."* y *"[t]ampoco se describe el remanente de la finca principal luego de los lotes segregados en la escritura de epígrafe"*. En consecuencia, el señor Lugo contrató al licenciado Jovino Martínez, para presentar ante el tribunal una acción de expediente de dominio por exceso de cabida para tratar de corregir las deficiencias señaladas por el Registro de la Propiedad. La petición juramentada se presentó ante el Tribunal de Primera Instancia, Sala de Mayagüez, bajo el número CS90-1037, donde solicitaron que se ordenara a la Registradora de la Propiedad, Sección de San Germán, inscribir a nombre del matrimonio Lugo Martínez el dominio que poseían sobre toda la propiedad a la que se refería dicho expediente de dominio.

Mientras ocurrían estos trámites, los apelados Reyes Vélez poseían un plano de construcción para edificar su residencia en el solar *"D"*, pero ARPE les requería evidencia de que la compraventa estaba debidamente registrada, previo a cualquier aprobación. Empero, desde que entraron en posesión del solar visitaban el lugar frecuentemente en unión a sus hijos y lo disfrutaban como lugar de pasadía.

Por otro lado, los hermanos Fernández Van Cleve y sus respectivas sociedades legales de bienes gananciales sometieron a ARPE un plano preparado por el Agrimensor Luis A. Santana Alvarado, sobre Proyecto de Lotificación, en el caso Núm. 93-56-A-490 MPLS. En dicho documento, se propone la división de la finca de 15.505 cuerdas en dos solares de 7.7525 cuerdas, equivalentes a 30,470.3480 metros cuadrados cada uno. En la resolución emitida por ARPE se indica que el acceso al solar de 7.7525 cuerdas a crearse es por una calle municipal de 10.00 metros de ancho creado mediante el caso núm. 84-56-C 524 MPL. El remanente de 7.7525 cuerdas tendrá acceso por una calle municipal de 10.00 metros creada mediante el caso núm. 83-56-B 329 MPL. El uso propuesto para ambos solares es agrícola y la segregación es con el propósito de que cada hermano pueda inscribir su propiedad por separado en el Registro de la Propiedad. Se ordenó, entonces, someter un plano de inscripción con cabida, rumbos, distancias, y colindancias de cada uno de los solares a formarse del remanente de la finca aunque esquemático y las servidumbres a establecerse.

Sometido el plano, el 2 de marzo de 1993, preparado por el Agrimensor Luis A. Santana Alvarado, los hermanos Fernández Van Cleve solicitaron la segregación del solar de 7.7525 cuerdas. ARPE aprobó condicionadamente el plano, sujeto a que dicha lotificación debía ser reservada única y exclusivamente para uso agrícola. Añadió que se debía reservar, además, una faja de terreno de 3.00 metros de ancho medidos desde el borde del cauce a todo lo largo de la quebrada colindante al suroeste, para faja verde. El plano aprobado refleja dicha segregación al Oeste de la propiedad comprada al matrimonio Lugo Martínez, cuyos dueños ahora lo serían Bert Fernández Van Cleve, Elizabeth O'Brian y la Sociedad Legal de Bienes Gananciales compuesta por ambos. El remanente de 7.7525 cuerdas quedó al Este de la propiedad comprada, y al Sur del solar de los apelados Reyes Vélez; quedando este solar adjudicado a los apelantes Fernández Palmer.

Por su parte, el 28 de junio de 1993, el matrimonio Bolaño Meléndez compró al matrimonio Lugo Martínez el Solar "E", constituyendo sobre el mismo una hipoteca a favor de Doral Bank para garantizar un préstamo hipotecario otorgado por dicha institución.

En el caso 93-56-A-490 MPD, los hermanos Fernández Van Cleve solicitaron a la ARPE, el día 20 de agosto de 1993, autorización para formar dos (2) solares y la segregación del remanente. Para ello sometieron *Plano de Inscripción Substituto para Segregar Dos (2) Predios*, preparado por el Agrimensor Luis Santana Alvarado, peticionando la formación del Lote Número 1 y Lote Número 2. A su vez, solicitaron una variación de la mensura del Lote Número 1 previamente aprobado. Mediante el informe de ARPE, se aprobó la formación

de los dos solares de 7.7525 cuerdas, identificados como Predio #1 y Predio #2, quedando un remanente de 3662.0074 metros cuadrados, equivalentes a 0.9317 cuerdas. Para esta fecha, se aprobó la segregación del solar de los apelantes Fernández Palmer. Así, mediante Escritura Pública Número 1, sobre Acta Aclaratoria, otorgada el 7 de enero de 1994, ante el Notario Ricardo Santana Ramos, se elevó a escritura pública dicha segregación.

Para finales del 1994, los apelados Reyes Vélez visitaron su solar y se percataron de que había una excavadora ("*digger*") moviendo tierra dentro del lado Sur de su propiedad. El co-apelado Reyes habló sobre el particular con el co-apelante Fernández, quien le manifestó que había comprado al matrimonio Lugo Martínez el terreno colindante por la parte Sur del solar "*D*". Sostuvo el co-apelante Fernández que el terreno donde estaba trabajando la excavadora le pertenecía y que si le faltaba cabida, la discrepancia debería estar en colindancia del solar "*D*" con el solar "*E*", el cual para ese entonces le pertenecía al matrimonio Bolaño Meléndez. Los apelantes Fernández Palmer continuaron moviendo tierra con la excavadora, construyendo un camino que da acceso a su propiedad, que corre de Este a Oeste en la colindancia Sur de la propiedad de los apelados y luego colocaron un portón a la entrada de dicho camino; lo que impedía que los apelados Reyes Vélez entraran a su solar. Esta construcción no fue sometida a ARPE para su aprobación.

Así las cosas, los apelados Reyes Vélez le reclamaron al señor Lugo que los apelantes Fernández Palmer les habían tomado terreno al construir un camino que parte del mismo discurría dentro del solar "*D*", a lo que les indicó que ese asunto debían resolverlo directamente con los apelantes. Ante la negativa de los apelantes a remover la verja y en vista de que no le respondían, el 28 de diciembre de 1995, los apelados Reyes Vélez acudieron ante el Tribunal de Primera Instancia, Sala de San Germán, presentando una querella al amparo de la Ley Núm. 140 de 23 de julio de 1974, 32 L.P.R.A. § 2871 et seq. ("*Ley Núm. 140*"), solicitando un dictamen provisional de derecho. Fueron incluidos como querellados los apelantes Fernández Palmer, colindantes al Sur, y el matrimonio Bolaño Meléndez, como dueños del solar "*E*", colindante por el Norte.

Mediante *Resolución* de 10 de diciembre de 1996, emitida por el Hon. Juez Aldo González Quesada, del Tribunal de Primera Instancia, Sala de San Germán, querella número 95-355, el tribunal se declaró sin jurisdicción en el asunto traído a su atención fundamentándose en dos (2) aspectos. En primer lugar señaló que no se cumplía con el mandato de la Ley Núm. 140, que requiere **un procedimiento sencillo y rápido** facultando a los jueces a establecer en ciertos asuntos, estados provisionales de derecho, fijando y determinando las relaciones y derechos de las partes envueltas. En segundo lugar, que a dicho tribunal se le hizo imposible emitir un estado provisional de derecho, toda vez que las partes no quisieron negociar sus respectivas cabidas a favor del colindante correspondiente. Por esta razón, el tribunal determinó la necesidad de resolver este caso de manera permanente en un proceso judicial, en un tribunal de mayor jerarquía.

Según señalado anteriormente, el 2 de abril de 1997, los apelados Reyes Vélez presentaron la demanda de epígrafe en el Tribunal de Primera Instancia, Sala de Mayagüez, Caso Civil Número IAC1997-0136, sobre deslinde, acción reivindicatoria y daños. Luego de varios incidentes procesales, el día 11 de marzo de 1998, el tribunal emitió *Orden* designando al Agrimensor René Guerra como Perito del Tribunal, donde se le encomendó "*verificar las colindancias de varias propiedades que le serán indicadas por las partes*". De conformidad a la minuta de 17 de marzo de 1998, sobre *Vista de Conferencia Sobre el Estado de los Procedimientos*, se colige que todas las partes se allanaron a que fuera nombrado bajo la Regla 59 de Evidencia, el Agrimensor René Guerra como Perito del Tribunal, toda vez que no hubo dudas sobre su capacidad y credenciales para tal encomienda. Nótese que las partes se reservaron el derecho a presentar evidencia pericial en refutación a los hallazgos del Agrimensor Guerra.

Mediante *Moción Informativa*, de 19 de mayo de 1998, el Perito del Tribunal, René Guerra, informó que había recibido toda la documentación que las partes le habían sometido, explicaba la forma y manera en que llevaría a cabo su trabajo e informaba los solares que habría de mensurar.

Por otro lado, la Escritura Pública Número 118, sobre segregación y compraventa, del 30 de junio de 1988, quedó inscrita en el Registro de la Propiedad de San Germán, el día 14 de enero de 2000.

En la vista celebrada el 2 de junio de 2000, el tribunal señaló vista para determinar colindantes y entregar prueba documental al Perito del Tribunal, el 15 de septiembre de 2000. Para dicha vista se ordenó traer todos los títulos de las respectivas propiedades, así como documentos que las partes entendieran que debían ser considerados por el Agrimensor Guerra. Se ordenó además al señor Edgardo Sánchez Cardona, Archivero de ARPE, comparecer a dicha vista trayendo consigo el expediente número 84-56-C524-MPL; P.L. 88-4-0179, sobre el plano preparado por el Ingeniero Julio Nazario, aprobado el 11 de marzo de 1988. Igualmente citó la comparecencia del Perito del Tribunal, René Guerra, a los efectos de que éste recibiera toda la prueba pertinente que le fuera presentada por las partes y que permitiera rendir su labor como Perito del Tribunal.

Llamado el caso para la mencionada fecha, comparecieron las partes, examinaron los documentos presentados por ARPE y estipularon que el plano preparado por el Ingeniero Nazario *"representa las colindancias de la finca objeto de la presente causa de acción"*.

En cumplimiento a la orden emitida por el tribunal, el 7 de agosto de 2002, el Agrimensor René Guerra presentó el *Informe Pericial*. Del escrito se colige, que luego de los estudios de campo realizados y tomando como referencia los planos de las segregaciones practicadas en la finca principal, el presente caso sobre confusión de colindancias fue provocado por errores cometidos al replantear las colindancias de los solares segregados mediante el caso ARPE número 84-56-C524 MPL. Concluyó el perito que *"una porción del acceso a la finca perteneciente al señor John Fernández Van Cleve, ocupa parte del solar "D" propiedad del señor Ramón Reyes Lamboy. El área ocupada contiene una cabida de ochenta y dos metros cuadrados con cincuenta y siete centímetros (82.57 mc)."*

Llamado el caso a la *Conferencia con Antelación al Juicio*, el 22 de noviembre de 2002, comparecieron todas las partes junto a sus respectivas representaciones legales. En el Informe, los apelantes Fernández Palmer alegaron que la mensura realizada no se hizo conforme a derecho y que *"el Plano sometido por el Perito del Tribunal adolece de serias fallas de veracidad y procedimiento tecnológico."* Arguyeron que *"la mayor probabilidad de que le faltara terreno a [los apelados Reyes Vélez], dicho terreno estará en el solar a su colindancia Norte, o sea, la colindancia con el señor Álvaro Bolaño de la Hoz"*. En consecuencia, el pleito no se encontraba maduro para juicio en su fondo, ya que los colindantes por la parte Norte del solar "D", el matrimonio Bolaño Meléndez, no habían sido traídos al caso. Notificaron, además, que utilizarían como perito al Agrimensor Julio Ríos.

El 16 de abril de 2003, en el comienzo del juicio, el tribunal ordenó al Agrimensor René Guerra a que se reuniera con el perito de los apelantes, el Agrimensor Julio Ríos, a los efectos de que intercambiaran información, analizaran y estudiaran las posibilidades de armonizar ambos informes y a su vez ordenó rindieran nuevo Informe.

Por razón de *Resolución* de 2 de junio de 2003, se ordenó el traslado del presente expediente al Centro Judicial de Ponce por razón de que la co-apelada Herminia Vélez Rodríguez se desempeñaba como empleada en el área de Relaciones de Familia en el Centro Judicial de Mayagüez. Al caso en traslado se le asignó el número JAC2003-0608.

En cumplimiento con lo ordenado, el 2 de diciembre de 2004, el Perito del Tribunal, Agrimensor René Guerra, y el perito de los apelantes Fernández Palmer, el Agrimensor Julio Ríos, rindieron *Informe de los Peritos*. Surge del mismo que el plano de inscripción del Ingeniero Julio Nazario (Caso número 84-56-C254 MPL), en el que se definen los solares *"D"* y *"E"*, adolece de serias deficiencias matemáticas. *"Si se calculan los dos solares como una sola unidad se hallan discrepancias de 0.878 metros en la dirección Este-Oeste y de 2.744 metros en la*

*dirección Norte-Sur. Es decir, que son casi las mismas discrepancias del solar "E".* **Por tal razón se decidió hacer un ajuste de los datos de las distancias por el método de mínimos cuadrados, ya que este método es el que garantiza modificaciones a las medidas originales cuya suma al cuadrado es un mínimo."** (Énfasis nuestro)

Para evitar las grandes discrepancias y ajustando los datos de las distancias por el método de mínimos cuadrados, se realizaron nuevos cómputos sobre las distancias originales, y se concluyó que la cantidad de terreno que aparece como invadida por los apelantes Fernández Palmer resulta en 45.2010 metros cuadrados al Sur del solar *"D"*. Ahora bien, la distancia original del solar *"E"* cambia de 21.45 metros a 22.50 metros. Esta distancia se estipuló como 24.2894 metros, por lo que disminuye por 1.789 metros. Es decir, el terreno de los apelados Reyes Vélez está invadido por el Norte en 39.0042 metros cuadrados, por el solar *"E"*. Ambos agrimensores estuvieron de acuerdo en que la colindancia Sur del solar *"D"* no era la verja de alambre de púas que se identificó previamente en el plano del Agrimensor Guerra.

Determinado a través del informe rendido por los peritos, que en efecto el Solar *"E"* invadía el solar de los apelados Reyes Palmer, se enmendó la demanda el 1 de febrero de 2005, para incluir como partes indispensables al matrimonio Bolaño Meléndez, dueños de dicho solar. Se incluyó además, a Doral Bank puesto que el solar *"E"* se encontraba afectado por una hipoteca de $110,808 de principal e intereses al 6.95% con vencimiento al 1 de noviembre de 2031. Por residir fuera de Puerto Rico los dueños registrales del solar *"E"*, se procedió a solicitar emplazamientos por edictos el 13 de abril de 2005.

Luego de varios incidentes procesales, Doral Bank anunció como su perito a José I. Viruet Ramos, de la firma Viruet Ramos Agrimensores y Asociados. Éste rindió *Informe Pericial,* el 25 de enero de 2006, donde luego de llevar a cabo las mensuras de los solares, desde la carretera 102, en dirección de Norte a Sur, estuvo de acuerdo con el Informe rendido por los dos restantes peritos de fecha 2 de diciembre de 2004, y con el método utilizado de Mínimos Cuadrados.

*"Tengo por conocimiento de un informe al tribunal que el 17 de noviembre de 2005 ambos agrimensores se reunieron y en esa reunión acordaron ajustar las figuras de los solares por el método matemático de mínimos cuadrados. Este método es el que garantiza modificaciones a las medidas originales cuya suma al cuadrado es el mínimo.* **Esta es la mejor manera de atacar el problema de un plano con tantos errores para hacerlo más viable en el momento de replantear sus puntos. Conociendo esto, me allano a la decisión de los peritos de hacer este ajuste por entender que no había otra forma de resolver el problema.**

*Ya hecho los ajustes a los solares... [q]ueda evidenciado que aún el camino que conduce a la propiedad de [los apelantes Fernández-Palmer] tiene un área de 45.2010 metros cuadrados dentro del solar de [los apelados Reyes-Palmer]. Con respecto al solar de [el matrimonio Bolaño-Meléndez], éste tiene un muro construido que está totalmente dentro de su propiedad y el área que se le resta en el ajuste es de 39.0042 metros cuadrados, aunque no encontré en el campo rastros de que éste tuviera su solar marcado en esas distancias."* (Énfasis nuestro)

Estando de acuerdo los tres peritos, los apelados Reyes Vélez presentaron *Solicitud de Sentencia Sumaria,* el 17 de febrero de 2006, donde señalaron que no existiendo controversia de hechos ni de derecho conforme a la prueba pericial, solicitaban que se dictara sentencia sumaria cediendo el deslinde y reivindicación de la propiedad de acuerdo a la Regla 36 de Procedimiento Civil.

En la *Vista de Comparecencia* de 7 de diciembre de 2006, todas las partes señalaron estar de acuerdo con el plano preparado por los peritos, el cual establece la forma en que se podrían corregir las deficiencias del plano original, excepto los apelantes Fernández Palmer, quienes señalaron estar en desacuerdo con el punto #5 utilizado en el plano, toda vez que tenían prueba para establecer que ese punto utilizado por los peritos (inclusive utilizado

por su perito) es incorrecto y debía estar marcado en otro sitio. Es pertinente aclarar que los tres peritos señalaron que en cuanto a ellos, no había controversia y que en relación a su opinión pericial, ellos no tenían duda, a los efectos de que se tomó en consideración el plano por el cual las partes habían comprado sus terrenos; y sus respectivas escrituras. Ante la controversia señalada por los apelantes Fernández Palmer, el tribunal señaló fecha para el juicio.

Por su parte, Doral instó demanda en cobro de dinero y ejecución de hipoteca en contra del matrimonio Bolaño Meléndez, ante el Tribunal de Primera Instancia, Sala de Mayagüez, Civil Núm. ISCI2004-01925. En cumplimiento con una orden de ejecución de sentencia dictada en dicho caso, el 13 de marzo de 2007, se vendió en pública subasta el solar *"E"*, adjudicándose Doral la buena pro de la misma por la suma de $110,808.00. Mediante *Estipulación y Solicitud de Sentencia Parcial*, de 17 de septiembre de 2007, los apelados Reyes Vélez y Doral, solicitaron se dictara sentencia parcial en cuanto al deslinde del solar de los apelados Reyes Vélez en la colindancia Norte el mismo y como consecuencia la reivindicación del terreno invadido, ascendente a 39.0042 metros cuadrados. Este acuerdo al que llegaron las partes surge como consecuencia de que el perito de Doral, el Agrimensor José I. Viruet Ramos, había señalado previamente en su Informe que allanándose al método de Mínimos Cuadrados utilizado por los otros dos peritos, su conclusión en cuanto al terreno invadido era exactamente la misma.

Durante los días 11, 15, 29 y 30 de octubre, y 1 de noviembre de 2007 se celebró la vista en su fondo. Según mencionado anteriormente, instancia dictó **Sentencia** el 14 de diciembre de 2007, donde determinó que el camino levantado por los apelantes Fernández Palmer, invade terreno de los apelados Reyes Vélez en 45.2010 metros cuadrados. Por esta razón, ordenó que los 45.2010 metros cuadrados de terreno fuesen restituidos adecuadamente al Solar *"D"*. En su consecuencia, el inmueble de los apelantes sufriría una disminución de 45.2010 metros cuadrados que corresponden al área reivindicada por los apelados Reyes Vélez.

Inconformes con el dictamen, los apelantes Fernández Palmer presentaron *Moción en Solicitud de Determinaciones de Hechos Adicionales*, el 29 de diciembre de 2007; a lo que instancia declaró **No Ha Lugar**, en su notificación de 10 de enero de 2008.

Mediante *Moción Informativa*, el Perito del Tribunal, el Agrimensor René Guerra, el 24 de enero de 2008, declaró que de conformidad con la sentencia dictada por instancia, procedió a establecer los puntos de colindancia entre el solar *"D"* y el Solar *"E"* con varillas de acero.

Así las cosas, el 25 de enero de 2008, los apelantes Fernández Palmer presentaron su escrito *Moción en Solicitud de Reconsideración,* a lo que el 27 de febrero de 2008, instancia declaró **Nada Que Proveer**, toda vez que los apelantes presentaron un recurso de Apelación ante nuestro tribunal, con fecha de 11 de febrero de 2008.

En su escrito de Apelación, los apelantes Fernández Palmer alegaron como errores cometidos por instancia los siguientes:

*"1. Erró el Honorable Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Ponce, al determinar que el Solar de la Co-Demandada y Apelante, esposos Fernández Palmer, no quedó enclavado y sin salida a camino público.*

*2. Erró el Honorable Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Ponce, al determinar que la colindancia Norte del Solar de la Parte Demandante-Apelada, esposos Reyes Vélez, y la Sur del Solar "E" que perteneció al Sr. Bolaños de la Hoz, no era el muro que ubica en dicho solar, o al menos cerca del referido muro.*

*3. Erró el Honorable Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Ponce, al determinar que no procedía la Nueva Teoría presentada por el Perito Agrimensor Julio Ríos.*

*4. Erró el Honorable Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Ponce, al otorgarle total credibilidad al Sr. Ramón Reyes Lamboy en toda la extensión de su testimonio.*

*5. Erró el Honorable Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Ponce, al determinar que la información que emanaba de las escrituras o títulos presentados por la Parte Demandante-Apelada era suficiente en derecho para establecer la descripción y configuración del solar de dicha parte de manera que procediera el Deslinde solicitado.*

*6. Erró el Honorable Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Ponce, al no determinar que la "verja de alambre de púas" existente entre los solares pertenecientes a los esposos Fernández Palmer y a los esposos Reyes Vélez, y la cual delimita de facto la colindancia común de los mismos, está en el mismo lugar que se encontraba antes de que los Fernández Palmer adquiriesen su solar en el año 1987.*

*7. Erró el Honorable Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Ponce, al determinar que la solución de la controversia de este caso lo era la aceptación en su totalidad del Plano de Mensura Enmendado y su correspondiente Informe Pericial preparado el día 2 de diciembre de 2004.*

*8. Erró el Honorable Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Ponce, al determinar la procedencia en derecho de la Acción Reivindicatoria a favor de la Parte Demandante-Apelada en relación a los 45.2010 metros cuadrados que ocupa el camino de acceso al solar de la Parte Co-Demandada y Apelante dentro del Solar "D".*

## III

Resulta un principio básico en nuestro ordenamiento jurídico que en la apreciación de la prueba desfilada ante el Tribunal de Primera Instancia, el alcance de la revisión judicial sobre cuestiones de hechos está regulado por lo dispuesto en la Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2, la cual, en lo pertinente, dispone:

*"...las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos...".*

Por ello, nuestro Tribunal Supremo ha establecido que no debemos intervenir con las determinaciones de hechos que hace un Tribunal de Primera Instancia, y sustituir nuestro criterio por el del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su demeanor. *Ramos Acosta v. Caparra Dairy Inc.,* 113 D.P.R. 357, 365 (1982). Por lo tanto, el Tribunal de Primera Instancia está en mejor posición que el foro apelativo para aquilatar la prueba testifical, porque el primero tuvo el gran beneficio de poder observar la forma y manera en que los testigos expresaron su comportamiento en la silla testifical. *Flores v. Sociedad de Gananciales,* 146 D.P.R. 45, 49-50 (1998); *López v. ITT Intermedia,* 142 D.P.R. 857, 865 (1997); *Pueblo v. Chévere Heredia,* 139 D.P.R. 1, 15-16 (1995).

*"...y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer, incluso, más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad: la observación...".* Ortiz v. Cruz Pabón, 103 D.P.R. 939, 947 (1975).

De ahí la norma de *"no intervenir con la apreciación que de la prueba desfilada haya hecho el foro de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto".* Monllor Arzola v. Sociedad de

*Gananciales*, 138 D.P.R. 600, 610 (1995); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 181 (1985); *Pérez Cruz v. Hospital La Concepción*, 115 D.P.R. 721, 728 (1984). O sea, que *"en ausencia de pasión, prejuicio, parcialidad o error manifiesto, y a menos que la apreciación de la evidencia se aleje de la realidad fáctica o la prueba sea inherentemente imposible o increíble, el tribunal apelativo debe abstenerse de intervenir con la apreciación de la evidencia hecha por el foro recurrido."* *Pueblo v. Irizarry*, 156 D.P.R. 780, 788-789; *Pueblo v. Acevedo Estrada*, 150 D.P.R. 84, 99 (2000); *Pueblo v. Maisonave Rodríguez*, 129 D.P.R. 49, 63 (1991); *Pueblo v. Morales Rivera*, 112 D.P.R. 463, 464 (1982). Por ende, el foro apelativo no intervendrá con las sentencias que se revisen a menos que un análisis sereno y desapasionado de la prueba se les convenza de que las determinaciones de hechos formuladas por el Tribunal de Instancia no representan el balance más racional, justiciero y jurídico de la totalidad de la evidencia que desfiló ante él. *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 181 (1985)

No obstante, *"[e]l arbitrio del juzgador de hechos es respetable, mas no es absoluto. Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal"*. (Citas Omitidas) *Ramos Acosta*, 113 D.P.R., a la pág. 365. Así pues, los foros apelativos pueden dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que *"del examen de la totalidad de la evidencia, el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hechos están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida"*. Véase, *Maryland Casualty Co. v. Quick Const. Corp.*, 90 D.P.R. 329, 336 (1964). Además, es principio cardinal de derecho que este Tribunal, en el ejercicio de su facultad revisora, tiene amplia discreción en la apreciación de la prueba pericial y documental ofrecida, encontrándose en la misma posición que los tribunales de instancia y pudiendo aun adoptar su propio criterio en la apreciación de ella. *Moreda v. Rosselli*, 150 D.P.R. 473, 479 (2000); *Cruz v. Centro Médico de P.R.*, 113 D.P.R. 719, 721 (1983); *Velázquez v. Ponce Asphalt*, 113 D.P.R. 39, 48 (1982). No obstante, nuestra decisión debe estar fundada en la prueba vertida en el juicio por los peritos y la prueba documental. En ausencia de prueba, no es nuestra función establecer a este nivel apelativo los elementos requeridos por la causa de acción. *Ríos Ruiz v. Mark*, 119 D.P.R. 816, 821-822 (1987).

El caso de autos trata sobre acciones protectoras del dominio, en específico, sobre la acción reivindicatoria y de deslinde. Debemos explorar la distinción entre estas acciones y los criterios apropiados para realizar un deslinde.

El Artículo 319 de nuestro Código Civil, 31 L.P.R.A. § 1211, expresa que: *"[t]odo propietario tiene derecho a pedir el deslinde de su propiedad, con citación de los dueños de los predios colindantes. La misma facultad corresponderá a los que tengan derechos reales"*. La acción de deslinde tiene el propósito de determinar los linderos confundidos de dos heredades contiguas y el que se demarquen dichos linderos mediante la fijación de señales que indiquen los límites de cada finca. *"En el deslinde no se demanda una cosa cierta y determinada que como propietarios nos pertenezca, sino que, precisamente por la indeterminación de la propiedad confundida con la que le es colindante, se reclama la fijación de señales que la deslinden y hagan cesar la confusión."* *Zalduondo v. Méndez*, 74 D.P.R. 637, 641-642 (1953).

El deslinde es una acción disponible a *"todos los propietarios cuyas propiedades limítrofes tienen confundidos sus linderos por causas naturales, accidentes fortuitos o actos voluntarios de tercero, debiendo concurrir todos a un sólo juicio..."*. Artículo 1319 del Código Civil, 31 L.P.R.A. § 1211. La acción es imprescriptible. Artículo 1865 del Código Civil, 31 L.P.R.A. § 5295. Además, el hecho de haberse intentado o practicado una acción de deslinde no impide que se vuelva a hacer, si existen nuevas causas que lo justifiquen. *Zayas v. Autoridad de Tierras*, 73 D.P.R. 897, 901 (1952). La acción de deslinde no da ni quita derechos y puede practicarse más de una vez si existen razones nuevas para repetir la operación. *Zayas*, 73 D.P.R, a la pág. 901.

En la demanda donde pretenda ejercitar la acción de deslinde, el promovente tiene que hacer constar: 1) la

descripción de la propiedad; 2) el interés que la parte actora reclame en ella; 3) el nombre de la persona en posesión de la propiedad; 4) la razón por la cual se solicita se haga el deslinde; y 5) el requerimiento hecho a la otra parte y la negativa de ésta. *Zalduondo*, 74 D.P.R., a la pág. 641.

La sentencia de deslinde, en cambio, tiene el único efecto de precisar las colindancias de determinados inmuebles. Dicha sentencia *"no da ni quita derechos." Zalduondo,* 74 D.P.R., a la pág. 644; *Zayas,* 73 D.P.R., a la pág. 901; *La O v. Rodríguez,* 28 D.P.R. 636, 638 (1920). Por eso es que no perjudica al demandado la norma que impide litigar en el procedimiento de deslinde la prescripción adquisitiva de las partes. *Zalduondo*, 74 D.P.R., a la pág. 644.

Los principios expuestos revelan que la acción de deslinde tiene dos características distintivas. Una de ellas resulta evidente: el deslinde pretende individualizar los inmuebles, sin determinar, directamente, quién es su dueño. Por otro lado, en esta acción no se discute la validez ni la eficacia de los títulos, sino que se dirime su interpretación. Es en virtud de estas características que el deslinde *"no da ni quita derechos"*. Cuando el tribunal debe examinar la validez o eficacia de los títulos, o cuando el demandante solicita la posesión que corresponde a su dominio, estamos ante una acción reivindicatoria.

Los criterios apropiados para dirimir una acción de deslinde se enumeran en los artículos 320 y 321 del Código Civil. Resulta pertinente el primero de éstos, que dispone: *"[e]l deslinde será en conformidad con los títulos de cada propietario, y a falta de títulos suficientes, por lo que resultare de la posesión en que estuvieren los colindantes."* 31 L.P.R.A. § 1212. Roca Juan acata el tenor literal de este precepto al explicar que se trata de una jerarquía de métodos de prueba, pues *"aplicar el criterio de la posesión depende de que no haya títulos, o de que, aun habiéndolos, sean insuficientes."* Roca Juan, *Artículos 385 a 387*, en Albaladejo (dir.), *op. cit.*, pág. 506.

La preferencia por el deslinde, según los títulos, puntualiza el requisito de que sean *"títulos suficientes"*. Se discute en la doctrina española si la palabra *"suficiente"* exige un documento fehaciente. Indica Roca Juan que el Tribunal Supremo español ha rechazado tal condición, exigiendo únicamente que los títulos sean *"suficientemente expresivos"* para fijar la colindancia. Esto significa que deben contener datos capaces de determinar el límite o área perteneciente a cada propietario. Así, la insuficiencia de los títulos podría responder a que sus datos resultan incompletos o producen colindancias que son incompatibles con las circunstancias reales del terreno. Roca Juan, *Artículos 385 a 387, op. cit.*, pág. 506.

La regla de que se practicará el deslinde según los títulos luce tener más sencillez de la que tiene, pues, evidentemente, los títulos de hoy reflejan las colindancias de ayer. Y es posible que un título haga referencia expresa o tácita a linderos de diferentes clases, accidentes naturales o artificiales, edificaciones o signos, líneas imaginarias contenidas en un documento, y las múltiples modalidades de todos éstos. Surge así la pregunta de cuál es el tipo de lindero, identificado en un título, que será determinante del mismo.

Por su parte, el Artículo 280 de nuestro Código Civil, 31 L.P.R.A. § 1111, en lo pertinente establece que: *"[e]l propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla"*. La acción reivindicatoria se define como aquélla que puede ejercitar el propietario que no está en posesión, contra el poseedor que, frente a dicho propietario, no puede alegar un título jurídico que justifique su posesión. M. Albaladejo, V.L. Montes Penades, *Comentarios al Código Civil y Compilaciones Forales,* Tomo V, Vol. 1, segunda edición, Editorial Revista de Derecho Privado, Madrid (1990), a la pág. 210. Dicha acción judicial se entabla para reclamar la entrega de la cosa cuando ésta se halle en posesión de un tercero sin título alguno sobre la misma. J. Puig Brutau, *Fundamentos de Derecho Civil,* Tomo III, Vol. 1, cuarta edición, Bosch, Casa Editorial S. A., Barcelona (1994), a la pág. 162.

Los requisitos para el ejercicio de la acción reivindicatoria son: 1) que el demandante justifique su derecho de propiedad; 2) que la acción se dirija contra quien tenga la cosa en su poder; 3) que no concurra ningún derecho

del demandado que justifique su pretensión de retener la cosa frente al propietario; y 4) que la cosa de que se trate quede debidamente identificada. *Ibíd*, a la pág. 170. La naturaleza de la acción de reivindicación es una real con eficacia *erga omnes*, recuperatoria y de condena. Es *real* en tanto el propietario puede reclamar la cosa que le pertenece, reivindicándola de cualquier otra persona que la posea indebidamente; es *recuperatoria*, puesto que su finalidad es obtener la restitución de la posesión; y es *de condena*, en tanto que la sentencia que se obtenga, si es favorable a la parte actora, impondrá al poseedor-demandado un determinado comportamiento de restitución. J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, Tomo III, 8va Ed., Editorial Reus, S.A., Madrid (1976), a las págs. 190-191. Véase, Artículo 280 del Código Civil, 31 L.P.R.A. § 1111; *Pérez Cruz v. Fernández,* 101 D.P.R. 365 (1973); *Castrillo v. Maldonado*, 95 D.P.R. 885, 891-892 (1968); *Arce v. Díaz*, 77 D.P.R. 624, 628-629 (1954) (citando a Manresa, *op. cit*, 6ta ed., Reus, 1934, T. 3, pág. 138); *Ramírez v. Soto,* Op. 14 de junio de 2006, **2006 JTS 109**.

La acción reivindicatoria podrá estimarse ejercitada sin que se le haya dado ese nombre expresamente. No obstante, aunque no es preciso consignar nominalmente la clase de acción que se ejercita, sí es forzoso indicar en la demanda lo necesario para identificar qué acción es la ejercitada, el fundamento o razón de la acción, es decir, el hecho jurídico en que se engendra, como, en su caso, la acción que en la *litis* se hace valer. Puig Brutau, *Fundamentos de Derecho Civil*, a las págs. 164-166. En cuanto a la acción reivindicatoria, ésta ha de quedar precisada de algún modo, aunque para ello no sea decisivo el nombre que las partes hayan dado a la misma, para que la sentencia que se dicte y adquiera firmeza produzca la excepción de cosa juzgada en otro juicio o litigio en que se trate de discutir la misma cuestión. Albaladejo, Montes Penades, *Comentarios al Código Civil y Compilaciones Forales*, Tomo V, Vol. 1, 2da Ed., Editorial Revista de Derecho Privado, Madrid (1990), a la pág. 215. Por otro lado, la acción de deslinde puede ejercitarse al propio tiempo y en el mismo juicio que la reivindicatoria. *Ibíd*, a la pág. 223.

Para ejercer la acción reivindicatoria es necesario la concurrencia de los siguientes elementos: (1) un título legítimo de dominio del demandante; (2) que dicho título sea superior al del demandado, o el de éste sea nulo o inexistente; (3) el hecho de que el demandado se encuentra en la posesión de la cosa reivindicada; y (4) la identidad de la cosa a reivindicarse. *Pérez Cruz*, 101 D.P.R., a la pág. 37; *Castrillo*, 95 D.P.R., a la pág. 891. Como requisito de umbral, toda vez que la acción reivindicatoria sólo se concede al propietario de la cosa, será preciso que, quien la ejercite, demuestre que lo es. Será necesario, además, que la acción se dirija contra quien tiene la cosa en su poder; que dicho poseedor contra quien se dirige esta acción de naturaleza real no pueda oponer ningún derecho que justifique su pretensión de retener la cosa frente al propietario, **o sea, que carezca de título de dominio**; y que la cosa objeto de la reivindicación sea debidamente identificada. J. Puig Brutau, *Compendio de Derecho Civil*, Vol. III, Ed. Bosch, Barcelona (1989), a las págs. 46-47; Eduardo Vázquez Bote, *Tratado Teórico, Práctico y Crítico de Derecho Privado Puertorriqueño*, T. VII, Vol. I, Equity, San Juan (1991), a las págs. 324-325. (Énfasis suplido). Acorde, el efecto obligado de la concurrencia de los requisitos aquí apuntados será la procedencia de un dictamen pronunciando la restitución al demandante de la posesión de lo usurpado, fallo que, advenido final y firme, representará cosa juzgada, impidiendo los postulados de esta última doctrina la relitigación del asunto.

La distinción entre estas acciones ha suscitado varios criterios doctrinales. Ahora bien, nuestra jurisprudencia establece los siguientes principios. Una sentencia reivindicatoria declara el derecho dominical del demandante y ordena que el demandado le entregue la posesión del objeto. Como es sabido, la acción de deslinde y la de reivindicación constituyen diferentes causas de acción y se diferencian en que se tiene que pasar prueba distinta en cada una de ellas. Controversias sobre usucapión o prescripción no pueden presentarse ni litigarse en las acciones de deslinde. Para que una acción de deslinde proceda, basta con probar que existe una confusión de linderos entre las dos heredades involucradas y que no hay una colindancia precisa. El promovente no tiene que justificar que le falta terreno y que éste se encuentra localizado precisamente en la finca de los demandados, porque este tipo de cuestiones se dirimen en un pleito ordinario de reivindicación. Tal prueba se reserva para las acciones ordinarias que más tarde se ejerciten como resultado del deslinde. *Zalduondo*, 74 D.P.R., a la pág. 644.

Es menester señalar, por último, que las acciones de reivindicación y deslinde pueden acumularse o instarse sucesivamente. Por ejemplo, el propietario que desea recuperar un terreno de su colindante podría solicitar el deslinde para identificar precisamente el terreno.

Expuesto el derecho al caso de autos, procedemos entonces a aplicarlo a lo acontecido ante instancia.

En su primer señalamiento de error, los apelantes sostuvieron que erró instancia al determinar que su solar no quedó enclavado y sin salida a camino público. Arguyeron que dicha conclusión no era susceptible de hacerse en ese momento, debido a que no puede determinarse el hecho de que la finca no quedó enclavada hasta el momento en que el Agrimensor Guerra replanteara los puntos de su plano en el terreno. Señalan que en enero de 2008, el Agrimensor Guerra, Perito del Tribunal, procedió a establecer los puntos de las colindancias del solar *"D"*, perteneciente a los apelados Reyes Vélez, y que esto resultó en que *"efectivamente el predio de terreno de los [apelantes] Fernández Palmer quedó enclavado, y sin salida adecuada, razonable y segura a un camino público"*. Según los apelantes, al replantearse los puntos de colindancia, el camino de acceso a su solar disminuyó en su anchura ocasionando que el mismo carezca de una transitabilidad ordinaria y corriente. Argumentan que esta carencia de camino de acceso ocasiona que la finca quede enclavada *de facto* y sin salida adecuada a un camino público.

En lo pertinente y según señalado anteriormente, instancia tuvo ante su consideración seis planos, [5] ofrecidos como evidencia por los apelados Reyes Vélez, donde ARPE señala los accesos para entrar a la propiedad de los apelantes Fernández Palmer. De estos planos, cuatro (4) de ellos fueron preparados por el Agrimensor Luis Santana a solicitud de los apelantes, mientras que los últimos dos fueron preparados por el ingeniero Julio Nazario.

Según el plano presentado en evidencia, de 7 de febrero de 1993, los apelantes Fernández Palmer sometieron a ARPE un Proyecto de Lotificación, en el caso número 93-56-A 490 MPD, donde solicitaron la división de una finca de su propiedad con una cabida de 15.505 cuerdas en dos solares de 7.7525 cuerdas cada uno. Indica la resolución dictada que el acceso a crearse es por una calle municipal de 10.00 metros de ancho creado en el caso 83-56-B 329 MPL. Por lo tanto, se ordenó someter un plano de inscripción con cabida, rumbos, distancias y colindancias de los lotes a formarse.

A pesar de que los esposos Lugo Martínez ya no eran dueños del remanente de la finca, acudieron a ARPE y sometieron *Plano de Inscripción* Sustituto, el 9 de marzo de 1993, donde se enmendó el resumen de la totalidad de la cabida registral de la finca, de 20.892 cuerdas a 20.8187 cuerdas. Los accesos a los solares y a la finca de los apelantes quedaron inalterados. (*Exposición Narrativa de la Prueba Testifical,* Tomo II, a las págs. 225-232).

Una vez presentado el plano del 2 de marzo de 1993, preparado por el Agrimensor Luis A. Santana, con la finalidad de solicitar la segregación de un solar de 7.7525 cuerdas, propiedad de los apelantes Fernández Palmer, se identificaron dos accesos. El primer acceso está identificado como camino municipal que discurre desde la Carretera 102 de Norte a Sur, mientras que el segundo se encuentra al Sur de los solares, y discurre de Este a Oeste. Este plano fue objeto de variación, la cual quedó aprobada el 11 de octubre de 1993, donde a solicitud de los apelantes se enmendó la cabida de la finca y resumen de áreas. La resolución indica que se mantienen todas las demás disposiciones del informe anterior no alteradas en dicha resolución Por lo tanto, quedó vigente la condición de que la entrada a dichos predios de terreno a segregarse sería por un camino municipal de 10.0 metros de ancho creado en el caso 83-56-B 329 MPL.

Surge de la *Exposición Narrativa de la Prueba Testifical* que la descripción del solar *"D"*, propiedad de los apelados Reyes Vélez, al mencionar que colinda por el Sur con parte de un camino público, *"se refiere a un área de viraje que se le hizo al uso público que da acceso a la propiedad. Y como requisito de ARPE, se requiere que al final de una calle [sin salida] se haga un [área de] viraje para que los carros puedan [regresarse sin*

*dificultad]"*. (*Exposición Narrativa de la Prueba Testifical,* Tomo III, a las págs. 23-24). Además, en *"el área de viraje, se encontraría entonces con el acceso [principal] que se le proveyó [en el plano de segregación], al solar de [los apelantes Fernández Palmer]"*. (*Exposición Narrativa de la Prueba Testifical,* Tomo III, a las págs. 32-33). Este acceso se trata de "11 metros de servidumbre", que se les proveyó a los apelantes como entrada principal a su propiedad. (*Exposición Narrativa de la Prueba Testifical,* Tomo III, a la pág. 32). Ahora bien, según se desprende del plano de segregación presentado a ARPE, y del testimonio pericial del Agrimensor Guerra, se *"requería que el área de viraje se extendiera más hacia el Sur de lo que realmente se hizo"*. (*Exposición Narrativa de la Prueba Testifical,* Tomo III, a la pág. 30). Por lo que físicamente, *"le falta alrededor de seis metros hacia el Sur"*. (*Exposición Narrativa de la Prueba Testifical,* Tomo III, a la pág. 31). Aunque era *"tarea del desarrollador"* hacer el viraje del uso público en el lugar correspondiente, y según lo aprobado por ARPE en el plano de segregación, esto no se hizo. (*Exposición Narrativa de la Prueba Testifical,* Tomo III, a la pág. 36). *"Y la razón por la cual no se extiende más hacia el Sur, es porque hay una montaña o un talud que requeriría entonces que por cada metro o por cada pie que se moviera hacia el Sur, se desmontara dos pies horizontalmente"*. (*Exposición Narrativa de la Prueba Testifical,* Tomo III, a la pág. 29). Pero, *"que haya... una depresión o un talud... eso no significa que no se pueda habilitar, [p]orque en ingeniería todo es posible."* (*Exposición Narrativa de la Prueba Testifical,* Tomo II, a la pág. 205).

Estando el área de viraje más al Norte de lo que se supone que esté, *"el camino que [da acceso a la propiedad de los apelantes] está metido en el solar "D", [que es el de los apelados]."* (*Exposición Narrativa de la Prueba Testifical,* Tomo II, a la pág. 212). El camino invade *"45.20 metros [del terreno de los apelados Reyes-Vélez] en una figura irregular como llamarías normalmente como un semi-círculo... que es de forma irregular."* (*Exposición Narrativa de la Prueba Testifical,* Tomo II, a las págs. 214-215). Esto representaría, el eliminar *"aproximadamente dos metros en la parte más ancha del camino realizado por los apelantes Fernández-Palmer"*. (*Exposición Narrativa de la Prueba Testifical,* Tomo II, a la pág. 215).

Examinados los testimonios y la prueba documental presentada ante instancia, no tenemos duda de que el primer error señalado por los apelantes no se cometió. Del examen de la prueba presentada, a los efectos de dirimir las controversias de linderos, para así entender si procedían las acciones de deslinde y de reivindicación, nos vemos obligados a concluir que la finca de los apelantes no quedó enclavada. Surge de la prueba que el acceso por el uso público a la propiedad de los apelantes Fernández Palmer, debió haberse construido más al Sur. Se desprende, además, que al no construirse el acceso por el lugar aprobado, los apelantes construyeron un camino privado que lleva a su residencia, invadiendo en 45.20 metros el solar de los apelados Reyes Vélez. Se nos hace forzoso concluir que el acceso a la propiedad de los apelantes, según sometido en los planos presentados ante ARPE, debe ir aproximadamente seis metros más hacia el Sur. De esta forma no invade terrenos de los apelados Reyes Vélez, y el camino privado a su residencia podría llevar una anchura segura y transitable. Surge de la prueba que el desarrollador de los terrenos no hizo el acceso a la propiedad de los apelantes Fernández-Palmer en el lugar donde correspondía, toda vez que allí se encontraba una montaña donde en su punto más alto podría tener 25 pies de altura. Es menester señalar que el agrimensor Guerra, perito del tribunal, manifestó que *"en la ingeniería nada era imposible"*, y proveyó de opciones para establecer el área de viraje en su lugar correspondiente. A saber, desmontar la montaña y hacer un talud a razón de dos en uno, por cada metro que se mueva horizontal.

Alegan los apelantes que posterior al Juicio en su Fondo, el Agrimensor Guerra procedió a establecer los puntos de colindancia y que ello resultó en que su propiedad quedara enclavada. Acompañan sus alegaciones con prueba consistente en fotografías, donde se muestran las nuevas colindancias. Deben los apelantes saber que no podemos expresarnos en cuanto a hechos posteriores a la fecha de la vista en su fondo, y mucho menos podemos considerar prueba que no fue presentada ante instancia.

Como segundo error, señalan los apelantes que erró instancia al concluir que la colindancia Norte del solar *"D"* no era el muro existente que ubica en el solar *"E"*. Aducen que tal determinación constituye una inferencia

del foro apelado o de alguno de los peritos que no tienen pericia en el área de la ingeniería. Alegan que la mejor inferencia a hacerse, debió haber sido conforme al testimonio de Don Sixto Lugo, en cuanto a que las colindancias entre el solar *"D"* y el solar *"E"* estaban en los alrededores de donde ubica el muro.

Todos los planos que reflejan la propiedad de los apelantes, que datan de 1993 y que fueron considerados por instancia, establecen las colindancias marcadas con varillas. *"El punto 50 está marcado con varilla. Punto 51 dice que está marcado con varilla. Y el punto 52 dice que está marcado con varilla también."* (*Exposición Narrativa de la Prueba Testifical,* Tomo I, a las pág. 79). Según establecimos anteriormente, surge del *Informe Pericial* del Agrimensor José Viruet Ramos, perito de Doral, que *"con respecto al solar del Sr. Bolaño de la Hoz, **éste tiene un muro construido que está totalmente dentro de su propiedad** y el área que se le resta en el ajuste es de 39.0042 metros cuadrados...".* Esta determinación la hizo el perito de Doral, allanándose a lo establecido en el informe pericial que hicieran en conjunto el Perito del Tribunal, y el perito de los apelantes Fernández Palmer. Sobre esto, dice el perito de Doral, que *"entramos al caso, y hacemos el trabajo, y lo que hacemos es que concurrimos con lo que los peritos, anteriormente ya habían establecido."* (*Exposición Narrativa de la Prueba Testifical,* Tomo III, a las págs. 90-91).

Según manifestara el perito de los apelantes, Agrimensor Julio Ríos, a preguntas del Juez aceptó que *"quien mandó a excavar aquella tierra para poder poner el muro, lo puso dándose el espacio más amplio sin invadir ni con el talud el terreno del colindante".* (*Exposición Narrativa de la Prueba Testifical,* Tomo III, a la pág. 251).

De la *Exposición Narrativa de la Prueba Testifical* se colige que la controversia sobre el muro fue atendida con detenimiento por instancia. Tanto es así que el tribunal interrogó al Perito del Tribunal, Agrimensor Guerra, sobre el asunto. Del testimonio se colige que el muro *"se construyó para aguantar parte de deslizamiento de terreno, pero no siempre los muros se construyen en la colindancia... **En este caso, incluyendo al profesor, Agrimensor Ríos, habíamos aceptado que el muro no era colindancia."*** (*Exposición Narrativa de la Prueba Testifical,* Tomo V, a la pág. 108). Para determinar que el muro no era colindancia, se tomaron en consideración los planos sometidos en evidencia, los informes periciales de los tres peritos. Señala el perito del tribunal que *"el aspecto físico del muro [no es uno de colindancia]. Este que no tiene verja arriba, sino pues que llega más o menos al nivel del terreno, de la parte más alta del terreno y no continúa hacia arriba como sería una verja para proteger. Tendría que tener una altitud mayor, algunos 6 pies o algo así".* (*Exposición Narrativa de la Prueba Testifical,* Tomo V, a la pág. 111). Además, el muro no discurre totalmente de Este a Oeste, dividiendo totalmente los solares, sino que *"se mantiene un poco alejado de la verja que termina en la parte [Oeste del solar "E"]".* (*Exposición Narrativa de la Prueba Testifical,* Tomo V, a la pág. 111). En fin, *"la intención aparenta ser de aguantar o proteger el deslizamiento de la tierra porque ya cuando termina el muro pues ya ahí no hay mucho relieve que tenga una función que hacer algún muro."* (*Exposición Narrativa de la Prueba Testifical,* Tomo V, a la pág. 112).

Examinada la prueba vertida en el foro primario, concluimos que el segundo error señalado no se cometió. No podemos estar de acuerdo con los apelantes, quienes señalan que la determinación de instancia fue una inferencia de quien no tiene pericia en el área de la Ingeniería. La prueba presentada ante dicho foro demostró que el muro existente en el solar *"E"* se hizo con fines de evitar deslizamientos de terreno, y no fijar colindancias. Sobre esto, los tres peritos del tribunal estuvieron de acuerdo en sus respectivos informes periciales sometidos en evidencia. En su informe pericial, de 2 de diciembre de 2004, el perito del tribunal, y el perito de los apelantes, concluyeron que el solar de éstos invade el solar de los apelados en 45.20 metros cuadrados y que el solar *"E"* invade el solar de los apelados en 39 metros cuadrados.

Ahora bien, el día 11 de octubre de 2007, día en que comenzó el juicio en su fondo, el perito de los apelantes, el Agrimensor Julio Ríos, decidió cambiar su postura en cuanto a la teoría de los linderos, y decidió que el muro de contención existente marca la colindancia Norte del solar de los apelados Reyes-Vélez. En relación a esta nueva teoría, el Agrimensor Julio Ríos señala que *"yo no medí nada".* (*Exposición Narrativa de la Prueba*

*Testifical,* Tomo III, a la pág. 286). A diferencia de los otros dos peritos, quienes testificaron que ambos midieron los terrenos.

A instancia no le mereció crédito la nueva teoría del Agrimensor Ríos, en especial, luego de que declarara que no midió nada, y que tampoco rindió informe alguno. Su teoría tampoco fue acompañada de plano alguno que sustentara la misma. Así queda evidenciado que instancia no erró al determinar que no procedía la nueva teoría presentada por el perito de los apelantes.

De igual forma, arguyen los apelantes que erró instancia al no determinar que la cerca de púas que ubica dentro del solar de los apelados Reyes Vélez, delimita *de facto* las colindancias entre el solar de los apelados y el solar de los apelantes. Según discutimos anteriormente, en el informe pericial de 2 de diciembre de 2004, sometido por los peritos Guerra y Ríos, al cual se allanó el perito Viruet, específicamente establecía que *"la cerca de alambres de púas no constituye colindancias"*. Habiéndose establecido que los testimonios presentados por los peritos Guerra y Viruet merecieron entero crédito por parte de instancia, entendemos que este error tampoco se cometió.

Del examen de la *Exposición Narrativa de la Prueba Testifical* y de la prueba documental sometida en evidencia, se colige que los errores en cuanto a la apreciación de la prueba, señalados por los apelantes Fernández Palmer, no se cometieron. Un examen cuidadoso de los autos originales y la *Exposición Narrativa de la Prueba Testifical,* revela que las determinaciones de instancia encuentran amplio apoyo en la evidencia presentada.

En conclusión, encontrado probado que las determinaciones de hechos del foro de instancia resultan ser correctas, no albergamos dudas de que dicho foro recibió y aquilató la prueba testifical que a bien tuvieron en presentar los apelados para sostener sus alegaciones en cuanto a que su solar había sido invadido en 39.0042 metros cuadrados en el Norte, por el solar *"E"*; y en 45.2010 metros cuadrados en el Sur, por el solar de los apelantes Fernández Palmer. En consideración a lo expuesto, concluimos que es improcedente sustituir el dictamen de instancia, ausente los elementos que lo justificarían, es decir, pasión, prejuicio o parcialidad del tribunal sentenciador.

En mérito de lo cual, confirmamos la **Sentencia** dictada el 14 de diciembre de 2007, por el Tribunal de Primera Instancia, Sala de Ponce.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2008 DTA 110

1. El 4 de febrero de 1986, Sixto Lugo Acosta y su esposa María Martínez (denominados como *"Lugo-Martínez"*) suscribieron una declaración jurada en la cual hicieron constar que ese mismo día habían recibido de los apelados Reyes Vélez, $11,000 por concepto del precio total de venta del Solar *"D"* con una cabida de 1,104.92 metros cuadrados.

2. El 28 de junio de 1993, Álvaro Bolaño de la Hoz, Lizbeth Ivelisse Meléndez, y la Sociedad Legal de Bienes Gananciales compuesta por ambos, le compraron al matrimonio Lugo Martínez el Solar *"E"*, y constituyendo sobre el mismo una hipoteca a favor de Doral Bank para garantizar un préstamo hipotecario otorgado por dicha institución.

3. Los apelados Reyes Vélez y Doral Financial suscribieron una estipulación transaccional, mediante la cual Doral reconoce que el Solar *"E"* invade en 39.0042 metros cuadrados el solar perteneciente a los apelados Reyes Vélez, y acuerda llevar a cabo el replanteo de los puntos, accediendo al deslinde y como consecuencia la reivindicación del terreno invadido ascendente a 39.0042 metros cuadrados. En dicho acuerdo transaccional se ordena al agrimensor René Guerra que se persone

al lugar y deje establecido, con varillas, la colindancia entre el Solar "*D*" y el Solar "*E*", según señalado en su informe.

**4.** Mediante Acta de Subasta, expedida en el caso *Doral Financial Corp. v. Álvaro Bolaño y otros*, Civil Núm. ISCI2004-01925, se hace constar que el Solar "*E*" se vendió en pública subasta, y la misma le fue adjudicada a Doral.

**5.** 7 de febrero de 1993, 2 de marzo de 1993, 20 de agosto de 1993, 11 de octubre de 1993, plano de fecha 11 de marzo de 1988 y plano sustituto de 9 de marzo de 1993.